IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **ANTHONY SLAMA,** | ) | 1:08-cv-810  AWI GSA |
| Plaintiff, | ) ) | **ORDER ON DEFENDANTS'** |
| v. | ) ) | **MOTION FOR SUMMARY JUDGMENT** |
| **CITY OF MADERA, MADERA POLICE DEPT., OFFICER CHAVEZ, OFFICER SHEKIANIAN, and DOES 1 through 100,** | ) ) ) ) ) | (Doc. No. 53) |
| Defendants. | ) ) ) | |

This case stems from the arrest of Plaintiff Anthony Slama ("Slama") by Madera Police Officers Josh Chavez ("Chavez") and Shant Sheklanian ("Sheklanian")[1] for violation of California Penal Code § 148.  Slama has brought suit in this Court under 42 U.S.C. § 1983 and alleges four violations of the Fourth Amendment against the City of Madera ("the City"), Chavez, and Sheklanian.  Defendants move for summary judgment.  Slama has filed no opposition or response of any kind.  For the reasons that follow, the Court will grant summary judgment as to the first, third, and fourth causes of action only.

**FACTUAL BACKGROUND**[2]

On December 20, 2005, at approximately 1:30 a.m., Slama was arrested for violation of

---

[1] Sheklanian was erroneously identified as "Shekianian."

[2] The factual background is taken from Defendants' Undisputed Material Facts ("DUMF").  Slama filed no response, objection, or contrary evidence to the DUMF's.

Penal Code section 148(a)(1) – resisting, delaying or obstructing an officer. DUMF 1. Officers Chavez and Sheklanian had observed Slama walking in the shadows on the South side of East Central Avenue and "D" Street. DUMF 2. This area is known for drug activity. See Chavez Depo. 20:20-24. The officers were in a marked police cruiser. See Sheklanian Depo. 21:17-22:10. The officers exited their vehicle and asked to speak with Slama. DUMF 2;[3] Chavez Depo. 11:10-12:25. Slama acted very nervous, and the officers asked Slama if they could search him for weapons. DUMF 3.[4] Slama appeared to consent to be searched for weapons as he turned around and placed his arms behind his back. See Chavez Depo. 17:14-18:1; Sheklanian Depo. 32:12-34:16. When the officers began to conduct the search for weapons, they noticed that Slama was tense and his hands were tightened into fists, his right fist appearing especially tight. See Chavez Depo. 19:15-20:6; Sheklanian Depo. 30:22-31:5.[5] DUMF 4. Chavez repeatedly told Slama to relax and requested that Slama open his hand, but Slama refused. See DUMF 4; Chavez Depo. 19:15-20:6-11. When Slama refused to comply, Chavez attempted to sweep Slama's legs. See Chavez Depo. 21:5-12. Slama brought his right hand up to his mouth.[6] See Chavez Depo. 21:12-15; Sheklanian Depo. 31:5-16. Sheklanian did not see Slama open his mouth or see anything go into Slama's mouth, apparently because Chavez was trying to control Slama, see Sheklanian Depo. 31:3-16,[7] but Chavez testified that Slama opened his hand and opened his mouth and then put his hand over his mouth like he (Slama) had just taken something.

---

[3] DUMF 2 reads that Slama consented to the officers' request. However, the deposition pages cited do not support this assertion.

[4] DUMF 3 also reads that the officers asked to search Slama, in part, because of the time and their location. However, the cited evidence does not support this assertion.

[5] DUMF 4 reads that the officers noticed that Slama had something in his right hand. The evidence cited does not support the assertion. In fact, Chavez testified that he did not see anything in Slama's hands. See Chavez Depo. 18:11-13. However, the evidence cited does support the fact that Slama's right hand was in a fist and became especially tight.

[6] Sheklanian testified that Slama raised his arm to his mouth prior to Chavez sweeping the leg, but Chavez testified that Slama made this motion as he was falling from the leg sweep. Cf. Chavez Depo. 21:5-25 with Sheklanian Depo. 35:13-21. For purposes of this motion, the precise sequence of this event is not material.

[7] Sheklanian's testimony indicates that Slama was attempting to raise his right arm up to his torso, but Chavez was attempting to stop Slama from doing so and telling Slama to "put your arm back." See Sheklanian Depo. 31:3-16.

See Chavez Depo. 21:14-18; see also DUMF 5.[8]  Chavez told Slama to "spit it out," but Slama did not do so, and continued to struggled with the officers.  See Chavez Depo. at 21:23-22:18; Sheklanian Depo. 31:17-22.[9]  The officers believed that Slama was swallowing drugs and did not know if Slama had weapons on his person.  DUMF 6.[10]  Slama and the officers struggled until Chavez deployed his Taser.  See DUMF 7.  After Chavez used his taser, Slama was then taken into custody without further incident.  Id.[11]

The City filed charges against Slama for violation of Penal Code section 148(a)(1) in Madera County Superior Court, Case No. MCR024183.  DUMF 8, 21.  The charges remained pending until they were dismissed on May 2, 2008.  DUMF's 9, 22.  The charges were dismissed after Slama was convicted for other separate pending matters.  See id.

The City Police Department has a Post Perishable Skills Program regarding Arrest and Control.  DUMF 10.  The City has a Post Perishable Skills Program regarding Tactical Firearms.  DUMF 11.  The City's police officers receive training on the necessary tactical knowledge and skills to safely and effectively arrest and control a suspect.  DUMF 12.  The City Police Department's officers receive training on the necessary firearms tactical knowledge.  DUMF 13.  For example, Sheklanian has received at least 158 hours of training.  DUMF 14.  This includes 134 hours of POST certified training.  Id.

The City Police Department has a Manual which covers Use of Force, Deadly Force Review, Shooting Policy, Leg Restraint Device and Control Devices and Techniques.  DUMF 15.  The City Police Department Policy does not contain a policy or procedure that permits the

---

[8] DUMF 5 reads in part "Slama then took whatever was in his hand and put it in his mouth and then appeared to swallow it."  The evidence cited, however, is more consistent with the Court's recitation of Chavez and Sheklanian's testimony.

[9] DUMF 5 reads in part that the officers ordered Slama to open his mouth.  However, the evidence cited does not support the assertion.

[10] DUMF 6 reads in part that "Slama still refused to open his mouth and struggled with the officers."  The cited evidence does not deal with Slama refusing to open his mouth.

[11] DUMF 7 also reads, "The Taser was ineffective because of Slama's heavy leather jacket."  However, the cited evidence does not say that the Taser was ineffective and does not mention any "heavy leather jacket" that Slama may have been wearing.  Again, the cited evidence does not support the assertion.

3

use of excessive force by its officers in violation of the Constitution.  DUMF 16.

Slama has not retained an expert.  DUMF 17.  Slama did not take the deposition of the Chief of Police for the City Police Department or anyone regarding the training of either Sheklanian or Chavez.  DUMF 18.  Slama did not request, through the discovery process, any information regarding the City Police Department's supervision, training or control of its officers.  DUMF 19.  Slama did not request, through the discovery process, any information regarding the City Police Department's policies and procedures regarding use of excessive force.  DUMF 20.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of

evidence to support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

   The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is

not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

**DEFENDANTS' MOTION**

Slama alleges four violations of the Fourth Amendment: (1) wrongful arrest, i.e. arrest without probable cause; (2) excessive force; (3) *Monell* liability for failure to train; and (4) *Monell* liability for custom/policy to permit excessive force.  The Court will address each cause of action separately.

**1.     First Cause of Action  – Arrest Without Probable Cause**

*Defendants' Argument*

Defendants argue that the officers had probable cause.  Slama was walking in the shadows of a high crime area at 1:30 a.m.  When the officer approached, Slama acted very nervous.  After receiving permission to search for weapons, the officers noticed that Slama's hand was in a fist and he refused to open it.  Slama's hand came towards his mouth.  The officers struggled with Slama and Slama did not obey commands.

*Legal Standard*

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  United States v. Arvizu, 534 U.S. 266, 273 (2002); Ramirez v. City of Buena Park, 560 F.3d 1012, 1020-21 (9th Cir. 2009).  Under the Fourth Amendment, a "detention or seizure of a person occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  United States v. Orman, 486 F.3d 1170, 1175 (9th Cir. 2007); Desyllas v. Bernstine, 351 F.3d 934, 940 (9th Cir. 2003).

"The Fourth Amendment requires police officers to have probable cause before making a

6

warrantless arrest." Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009); see Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Rodis v. City & County of San Francisco, 558 F.3d 964, 969 (9th Cir. 2009); John v. City of El Monte, 515 F.3d 936, 940 (9th Cir. 2008). Courts look to "the totality of the circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime." John, 515 F.3d at 940; see Hart v. Parks, 450 F.3d 1059, 1066 (9th Cir. 2006). "The probable cause standard is incapable of precise definition or quantification" and is "a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Rodis, 558 F.3d at 969.

For seizures that do not amount to a full arrest, police may "detain or seize an individual for brief, investigatory purposes, provided the officers making the stop have reasonable suspicion that criminal activity may be afoot." United States v. Johnson, 581 F.3d 994, 999 (9th Cir. 2009) see Ramirez, 560 F.3d at 1020. "To determine whether [an investigatory] stop was supported by reasonable suspicion, we consider whether, in light of the totality of the circumstances, the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Palos-Marquez, 591 F.3d 1272, 1275 (9th Cir. 2010); see Ramirez, 560 F.3d at 1021. "The reasonable suspicion standard is a less demanding standard than probable cause, and merely requires a minimal level of objective justification." Gallegos v. City of Los Angeles, 308 F.3d 987, 990-991 (9th Cir. 2002); see also Ramirez, 560 F.3d at 1020. "Conduct innocent in the eyes of the untrained may carry entirely different messages to the experienced or trained observer," and thus, may form "reasonable suspicion." Ramirez, 560 F.3d at 1021.

Finally, "not all personal intercourse between policemen and citizens involves 'seizures' of persons." Florida v. Bostick, 501 U.S. 429, 434 (1991); Orman, 486 F.3d at 1175. Voluntary, consensual encounters with the police implicate no constitutionally protected rights.

See Desallys, 351 F.3d at 940; United States v. Summers, 268 F.3d 683 (9th Cir. 2001). Further, police officers "do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." Florida v. Royer, 460 U.S. 491, 497 (1983); Orman, 486 F.3d at 1175. That is, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." Bostick, 501 U.S. at 434; Orman, 486 F.3d at 1175. "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual." Mueller v. Mena, 544 U.S. 93, 101 (U.S. 2005); Bostick, 501 U.S. at 434. In addition to generally asking questions, police officers may also ask to examine identification and request consent to search. See Mueller, 544 U.S. at 101; Bostick, 501 U.S. at 434-35; United States v. Washington, 490 F.3d 765, 770 (9th Cir. 2007) However, the police may "not convey a message that compliance with their requests is required." Bostick, 501 U.S. at 435; Washingon, 490 F.3d at 770. Questioning by law enforcement officers constitutes an investigatory stop, which must be supported by reasonable suspicion, "only if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Desallys, 351 F.3d at 940; see also Orman, 486 F.3d at 1175. The "reasonable person" presupposes an "innocent person." Bostick, 501 U.S. at 438; Orman, 486 F.3d at 1175.

*Cal. Pen. Code § 148(a)(1)*

In pertinent part, Penal Code § 148 reads:

> Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Cal. Pen. Code § 148(a)(1). Therefore, the elements of a § 148(a) offense are: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer; (2) when the officer was engaged in the performance of his or her duties; and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties."

8

People v. Simons, 42 Cal.App.4th 1100, 1108-09 (1996). A person "cannot be convicted of an offense against an officer engaged in the performance of official duties unless the officer was acting lawfully at the time." Id.

*Discussion*

The Court does not see a Fourth Amendment violation. The evidence cited indicates that Chavez and Sheklanian approached Slama and asked to speak with him. The evidence does not indicate that the officers' conduct would lead a reasonably innocent person to believe that Slama was required to speak to them. See Bostick, 501 U.S. at 434-35; Orman, 486 F.3d at 1175. The officers did not need reasonable suspicion to walk up to Slama and ask to speak with him. See id. After the officers perceived that Slama was acting nervous, they asked to search him for weapons and Slama again consented, this time through his conduct of turning around and placing his hands behind his back. Cf. United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001) (noting that consent "can be inferred from words, gestures, and other conduct," and finding defendant's conduct provided consent to search his person); United States v. Mendoza-Cepeda, 250 F.3d 626, 629 (8th Cir. 2001) (finding consent to search defendant's torso when defendant raised his arms in response to request to search the torso). Nothing indicates that a reasonable, innocent person would have felt required to consent to the search or would have believed that he was not free to leave. See Bostick, 501 U.S. at 434-35; Orman, 486 F.3d at 1175. The officers did not need reasonable suspicion to ask Slama for consent to search. See id.

After Slama turned around and placed his hands behind his back, the officers saw that Slama was tense and very nervous and his hands were clinched into fists. Slama's right fist was especially tight. Considering the time of day (1:30 a.m.), the location (an area known for drug crime), that Slama had been walking in the shadows, that Slama was very nervous around the officers, that his body was tense, and that he clinched his fists (his right fist especially) after consenting to a search for weapons, the officers could have reasonably suspected that Slama had either a weapon or contraband in his fists. See Palos-Marquez, 591 F.3d at 1275; Ramirez, 560 F.3d at 1020-21; Chavez Depo. 19:15-21:18; Sheklanian Depo. 33:4-12. Chavez acted reasonably and within his duties as a police officer when he ordered Slama to open his fists.

Shortly after Slama refused to open his fists, the officers struggled with Slama and Slama brought his right hand up to his torso and then to his mouth. The officers reasonably believed that Slama had placed something in his mouth or was trying to hide/discard something. See Chavez Depo. 21:5-23, 26:7-9; Sheklanian Depo. 33:4-12. Chavez told Slama to spit out what was in Slama's mouth, but Slama refused. Chavez acted reasonably and within his duties as a police officer when he ordered Slama to spit out what was in his mouth. Slama and the officers continued to struggle.

At this point, Slama was/had been struggling with the officers and had delayed and obstructed the officers when he refused to open his fists, raised his right arm and hand to his torso and mouth, appeared to have placed something in his mouth or attempted to hide/discard something, and refused to spit out whatever was in his mouth (even if it was only saliva). The officers had been performing their lawful duties because they had acted lawfully in initially approaching and questioning Slama, and reasonable suspicion developed that Slama had either drugs or a weapon in his clenched fist. Under the totality of the circumstances, a person of reasonable caution would be lead to believe that an offense under Penal Code § 148(a) was being committed by Slama. See Rodis, 558 F.3d at 969; Cal. Pen. Code § 148(a); Simmons, 42 Cal.App.4th at 1108-09. In other words, the officers had probable cause to arrest Slama for violation of Penal Code § 148(a). Because the officers had probable cause, the Fourth Amendment was not violated, and summary judgment in favor of Defendants on this cause of action will be granted.

**2.      Second Cause of Action – Excessive Force**

Defendants' argument with respect to excessive force is not adequately developed. The motion contains no separate section or discussion regarding excessive force/the second cause of action. There is only one line that discusses excessive force with respect to the individual defendants. Under a section dealing with qualified immunity, Defendants state: "The officers' safety concerns were justified and that [sic] amount of force they used objectively reasonable for the circumstances." Court's Docket Doc. No. 53-2. This is wholly insufficient. There is no

identification of the particular force at issue, there is no analysis or discussion of the Graham factors, there is only a conclusion that the force was reasonable without any explanation or substantive discussion, and there is no discussion or explanation (or citation to analogous cases that might show) that a reasonable officer could have believed that the force used was appropriate.  See Saucier v. Katz, 533 U.S. 194, 200-06 (2001); Graham v. Connor, 490 U.S. 386, 395 (1989); Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007); Davis v. City of Las Vegas, 478 F.3d 1048, 1054 (9th Cir. 2007); Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001).  The motion is too conclusory and Defendants have not met their initial burden.  See Nissan Fire & Marine, 210 F.3d at 1102-03.  Summary judgment on this cause of action will be denied.

### 3.      Third & Fourth Causes of Action – *Monell* Liability

*Defendant's Argument*

The City argues that Slama has conducted no discovery regarding the policies and procedures of the City's Police Department.  The City's policies (as submitted as part of the motion) do not permit excessive force.  There is no evidence that suggests a systemwide failure to train.  There are no customs or policies that amount to deliberate indifference.  There is simply no evidence that the City fails to train or promotes excessive force.

*Legal Standard*

Although municipalities are considered "persons under 42 U.S.C. § 1983, a municipality "cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a *respondeat superior* theory."  Monell v. Department of Soc. Servs., 436 U.S. 658, 690-91 (1978); see Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Ulrich v. City & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002).  Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Monell, 436 U.S. at 694; Ulrich, 308 F.3d at 984.  A municipality's failure to train its employees

may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989); Long, 442 F.3d at 1186; Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." Long, 442 F.3d at 1186. A plaintiff alleging a failure to train claim police officers must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those officers. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007); Lee, 250 F.3d at 681. However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." City of Canton, 489 U.S. at 391. "Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County." Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989); see also McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000).

*Discussion*

There is no *Monell* liability here. First, because the officers did not arrest Slama without probable cause in violation of the Fourth Amendment, the City cannot be liable under 42 U.S.C. § 1983 for an arrest without probable cause. See Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Long v. City & County of Honolulu, 511 F.3d 901, 907 (9th Cir. 2007); Jackson, 268 F.3d at 653.

Second, there is no dispute that Slama has not conducted discovery regarding *Monell* liability. See DUMF's 17-20. Further, the undisputed evidence is that the City has policies regarding excessive force, provides training regarding the use of force, provides training regarding the arrest and control of suspects, and does not have a policy that permits the use of excessive force. See DUMF's 10-16. Slama has identified no policy or procedure, has not shown how the policy or procedure is defective, has not identified how training is defective, has

not shown that the City fails to train on a particular subject, and has not shown any conduct that amounts to deliberate indifference. At most, the evidence shows the personal, isolated conduct of two police officers, which is not sufficient. See McSherry v. City of Long Beach, 584 F.3d 1129, 1147 (9th Cir. 2009); McDade, 223 F.3d at 1141; Merritt, 875 F.2d at 770. Summary judgment on the third and fourth causes of action is appropriate. See McSherry, 584 F.3d at 1147.

## **CONCLUSION**

Defendants move for summary judgment on all four claims alleged in the complaint. With respect to the first cause of action for arrest without probable cause, the evidence indicates that the officers reasonably and properly requested Slama to open his fists, Slama brought his fist to his torso and mouth despite the efforts and commands of the officers, did not spit out whatever it was that he appeared to put in his mouth, and struggled with the officers. The officers initial questioning of Slama was reasonable and consensual, and reasonable suspicion arose during the encounter. The officer's commands and requests were reasonable and appropriate. Under the totality of the circumstances, the officers had probable cause to arrest Slama for violation of Penal Code § 148(a). Summary judgment on the first cause of action is appropriate.

With respect to the third and fourth causes of action, Slama identifies no improper policies, practices, procedures, or defective training, and does not show that the City acted with deliberate indifference. The evidence submitted shows that the City has policies and conducts training regarding excessive force and arresting and controlling a suspect. Summary judgment on the third and fourth causes of action is appropriate.

Finally, as for the second cause of action, Defendants have made only a conclusory argument. The appropriate factors and considerations in evaluating both excessive force and qualified immunity are absent. Because the argument is too conclusory, Defendants did not meet their initial burden. Summary judgment on the second cause of action is inappropriate.

However, recently the Ninth Circuit has held that lower courts have the discretion to allow a successive motion for summary judgment. See Hoffman v. Tonnemacher, 593 F.3d 908,

911 (9th Cir. 2010). Considering the importance of qualified immunity, that an interlocutory appeal from a denial of qualified immunity is available, that Plaintiff did not oppose this motion for summary judgment, and that the shortcoming of this motion was the conclusory nature of the argument made, a second summary judgment motion may be appropriate. If they choose to do so, Defendants will be permitted to file a successive summary judgment motion with respect to the second cause of action. See Hoffman, 593 F.3d at 911.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is GRANTED as to Plaintiff's first, third, and fourth causes of action;
2. Defendants' motion for summary judgment is DENIED as to Plaintiff's second cause of action;
3. If they so chose, Defendants may file a second motion for summary judgment (that complies with the requirements of Local Rule 260) with respect to the second cause of action on or by April 26, 2010;
4. If a second motion for summary judgment is filed, Plaintiff may file an opposition thereto on or by May 5, 2010;
5. Defendants must file a reply to any opposition on or by May 11, 2010;
6. If Defendants file the second summary judgment motion on or by April 26, 2010, the Court will thereafter set a hearing on the matter for May 17, 2010; and
7. The current pre-trial date of May 7, 2010, is VACATED and is RESET to June 3, 2010, at 8:30 a.m. in Courtroom 2.[12]

IT IS SO ORDERED.

**Dated:   April 15, 2010**          /s/ Anthony W. Ishii
                                     CHIEF UNITED STATES DISTRICT JUDGE

---

[12] The currently set trial date of July 13, 2010, remains unchanged. Additionally, if Defendants do not file a second summary judgment motion, the Court may again reset the pre-trial conference date.