1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

9
10
11
12
13
14
15
16
17

| | | |
|---|---|---|
| **ANTHONY SLAMA,** | ) | **1:08-cv-810  AWI GSA** |
| | ) | |
| **Plaintiff**, | ) | **ORDER ON DEFENDANTS'** |
| **v.** | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| **CITY OF MADERA, MADERA** | ) | |
| **POLICE DEPT., OFFICER CHAVEZ,** | ) | |
| **OFFICER SHEKIANIAN, and DOES** | ) | |
| **1 through 100,** | ) | (Doc. No. 57) |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

18
19
20
21
22
23
24
25
26
27

    This case stems from the arrest of Plaintiff Anthony Slama ("Slama") by Madera Police Officers Josh Chavez ("Chavez") and Shant Sheklanian ("Sheklanian")[1] for violation of California Penal Code § 148.  Slama brought suit in this Court under 42 U.S. C. § 1983 and alleged four violations of the Fourth Amendment against the City of Madera ("the City"), Chavez, and Sheklanian.  In a prior order, the Court granted Defendants summary judgment on all but the second cause of action, which alleges excessive force.  <u>See</u> Court's Docket Doc. No. 56.  The Court gave Defendants permission to file a second summary judgment on the second cause of action.  In compliance with that order, Defendants now move again for summary judgment.  Slama has filed no opposition or response of any kind to Defendants' motion.  For the reasons that follow, the Court will grant summary judgment and close this case.

28

---

[1]Sheklanian was erroneously identified as "Shekianian."

**FACTUAL BACKGROUND**[2]

In the early morning hours of December 20, 2005, Slama was arrested for violation of Penal Code section 148(a)(1) – resisting, delaying or obstructing an officer.  See DUMF 1. Officers Chavez and Sheklanian had observed Slama walking in the shadows on the south side of East Central Avenue and "D" Street.  DUMF 2.  It was 1:30 a.m., and this area is known for drug activity.  See DUMF 3.  The officers were driving in a marked police cruiser.  DUMF 4.  The officers exited their vehicle and asked to speak with Slama.  DUMF 5.  The officers asked Slama if they could search him for weapons.  DUMF 6.  Slama consented by placing his hands behind his back.  Id.  Slama appeared nervous.  Id.  When the officers began to conduct the pat search for weapons, they noticed that Slama was tense and his hands were tightened into fists, his right fist appearing especially tight.  See DUMF 7; Chavez Depo. 19:15-20:6; Sheklanian Depo. 30:22-31:5.  Chavez testified that as they were next to Slama, Slama was "overly nervous" and "his body was tight."  Chavez Depo. at 20:14-15.  Chavez repeatedly told Slama to relax and requested that Slama open his hand, but Slama refused.  See DUMF 8; Chavez Depo. 19:15-20:6-11.  When Slama refused to open his fist, Chavez attempted to sweep Slama's legs.  DUMF 9.  Chavez lost his grip on Slama as Slama was going down.  See id.; Chavez Depo. 21:12-15. Slama brought his fisted right hand towards his mouth.  DUMF 10.  Slama opened his mouth as if he was putting something in it.  See id.  Chavez told Slama to "spit it out," but Slama did not do so, and continued to struggle with the officers.  See Chavez Depo. at 21:23-22:18; Sheklanian Depo. 31:17-22.  Chavez believed that Slama had swallowed something or was trying to destroy something.[3]  See DUMF 12; Chavez Depo. 22:4-6.  In the course of the struggle, Chavez flipped Slama over onto Slama's stomach and put his weight on Slama.  See DUMF 13.  However, Slama was able to lift Chavez up and off of him by doing a movement like a "push-up."[4]  See id.;

---

[2] The factual background is taken from Defendants' Undisputed Material Facts ("DUMF").  Slama filed no response, objection, or contrary evidence to the DUMF's.

[3] Chavez testified that he believed that Slama had swallowed "contraband."  Chavez Depo. 26:7-9.

[4] Chavez testified that, at the time, he weighed 215 pounds, and that Slama was between 6'1" and 6'2" and weighed about 200 pounds.  Chavez Depo. 21:1, 22:8-9.

Chavez Depo. 21:23-22:18.  After Slama did the "push-up," Chavez did not believe that he could keep Slama down.  See Chavez Depo. 22:10-15.  Chavez pushed Slama's body away and to the ground, took a step back, reached for his taser, and then deployed the taser.  See id. at 22:12-15; DUMF 13. Slama was tased only one time.  DUMF 14.  After deploying the taser, the officers were able to handcuff Slama, apparently without further incident.  See Chavez Depo. 22:15-18.

Criminal charges against Slama for violation of Penal Code section 148(a)(1) were filed in Madera County Superior Court, Case No. MCR024183.  DUMF 15.  The charges remained pending until they were dismissed on May 2, 2008.  DUMF 16.  The charges were dismissed after Slama was convicted for other separate pending matters.  Id.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the moving party meets its initial

burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire, 210 F.3d at 1103.

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007. Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

## DEFENDANTS' MOTION

### Defendants' Argument

Defendants argue that Slama's Fourth Amendment rights were not violated. Two forms of force were used against Slama, a leg sweep and a taser. The situation confronting the officers changed when Slama turned around and placed his hands behind his back. Slama was nervous, tense, had clinched fists, and refused orders to open his hands. The officers did not know if Slama had a weapon in his hands. Later, Slama raised his arm to his mouth, and the officers

4

believed that Slama was attempting to hide or discard contraband.  Slama refused to spit out what was in his mouth, struggled with the officers, and was able to lift Chavez off of the ground. Chavez was unable to keep Slama on the ground, so the taser was deployed.  Slama posed an immediate threat to the officers, had been struggling with them, and refused to follow lawful commands.  The force was not excessive and was justified under the circumstances. Alternatively, the officers reasonably believed that the force used was reasonable.

*Legal Standard*

Qualified Immunity

A court employs a tiered analysis for determining qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 200-02 (2001); Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006); Brittain, 451 F.3d at 987.   However, lower courts need not strictly follow the tiered sequence in analyzing qualified immunity, but instead may dispose of the issue at step two without addressing step one.  Pearson v. Callahan, 129 S.Ct. 808, 821 (2009); Moss v. United States Secret Service, 572 F.3d 962, 968 n.5 (9th Cir. 2009).  Under the first step, the court determines whether, "taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201; Phillips, 477 F.3d at 1079; Skoog, 469 F.3d at 1229.  If the answer is "no," then the inquiry ends and the plaintiff cannot prevail; if the answer is "yes," the court continues the analysis.  See Saucier, 533 U.S. at 201; Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007); Johnson v. County of L.A., 340 F.3d 787, 793-94 (9th Cir. 2003).  Under the second step, the court determines "whether the right was clearly established," and applies an "objective but fact-specific inquiry."  Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see Saucier, 533 U.S. at 202; Brittain, 451 F.3d at 988.  The critical question is whether "the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates the right."  Saucier, 533 U.S. at 202; Phillips, 477 F.3d at 1079.  Whether a right is clearly established must be "undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier, 533 U.S. at 201; Skoog, 469 F.3d at 1229-30.  If the officer could have reasonably, but mistakenly, believed that his conduct did not violate a clearly established

5

constitutional right, then the officer will receive qualified immunity.  See Saucier, 533 U.S. at

205-06; Skoog, 469 F.3d at 1229; Johnson, 340 F.3d at 794; Jackson v. City of Bremerton, 268

F.3d 646, 651 (9th Cir. 2001).

Excessive Force

All claims that law enforcement officers used excessive force, either deadly or non-

deadly, in the course of an arrest, investigatory stop, or other seizure of a citizen are to be

analyzed under the Fourth Amendment and its standard of objective reasonableness.  See Graham

v. Connor, 490 U.S. 386, 395 (1989); Drummund v. City of Anaheim, 343 F.3d 1052, 1056 (9th

Cir. 2003).  The pertinent question in an excessive force case is whether the use of force was

"objectively reasonable in light of the facts and circumstances confronting [the officers], without

regard to their underlying intent or motivation."  Graham, 490 U.S. at 397; Blankenhorn v. City

of Orange, 485 F.3d 463, 477 (9th Cir. 2007).  The analysis of whether a specific use of force

was reasonable "requires a careful balancing of the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing government interests at

stake."  Graham, 490 U.S. at 396; Blankenhorn, 485 F.3d at 477; Davis v. City of Las Vegas, 478

F.3d 1048, 1054 (9th Cir. 2007).  "We first assess the quantum of force used to arrest [the

plaintiff]" and then "measure the governmental interests at stake by evaluating a range of

factors."  Davis, 478 F.3d at 1054.  Factors that are considered in assessing the government

interests at stake include, but are not limited to, "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396;

Blankenhorn, 485 F.3d at 477; Davis, 478 F.3d at 1054.  Reasonableness "must be judged from

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight."  Graham, 490 U.S. at 396; Drummond, 343 F.3d at 1058.   "The calculus of

reasonableness must embody allowance for the fact that police officers are often forced to make

split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about

the amount of force that is necessary in a particular situation."  Graham, 490 U.S. at 396-97;

Drummond, 343 F.3d at 1058.

1   *Discussion*

2   Chavez's leg sweep and single taser application are the only force applications that are at

3   issue. As such, summary judgment in favor of Shaklanian is appropriate because there is no

4   evidence that Shaklanian did these actions or utilized any force against Slama. See KRL v.

5   Moore, 384 F.3d 1105, 1118 (9th Cir. 2004); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

6   With respect to the leg sweep, Chavez's testimony indicates that a leg sweep is a form of

7   tripping. Chavez placed his left foot behind Slama's right leg, and then pushed Slama from

8   either Slama's hand, shoulder, or chin. See Chavez Depo. 21:7-12. There is no indication that

9   the force used to push Slama down was more than necessary, nor is there any indication that

10  Slama was harmed as a result. From the evidence described, the leg sweep performed by Chavez

11  was a low level of force. At the time of the sweep, the crimes that may have been at issue appear

12  to be misdemeanors, obstruction and possession of a controlled substance. Slama was

13  disobeying lawful commands to open his fisted hands, Slama's body was tense, and Slama was

14  overly nervous. Considering the early morning hour, that the area was a high crime/known drug

15  area, and Slama's behavior, Chavez had reasonable and legitimate concerns that Slama had either

16  a weapon or contraband in his fist. It was reasonable for Chavez to do something to gain control

17  of, or compliance from, Slama. Under the totality of the circumstances, and the absence of

18  contrary evidence or arguments by Slama in opposition, the leg sweep did not constitute

19  excessive force. See Graham, 490 U.S. at 395-97; Davis, 478 F.3d at 1054.

20  With respect to the taser application, the Court believes that qualified immunity is

21  appropriate because the facts of this case are very similar to the facts of *Draper v. Reynolds*, 369

22  F.3d 1270, 1278 (11th Cir. 2004).[5]  In *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), the

23  Eleventh Circuit discussed the single application of a taser on a suspect following a traffic stop.

24  In finding no constitutional violation, the Eleventh Circuit explained:

25      In the circumstances of this case, Reynolds's use of the taser gun to effectuate the
        arrest of Draper was reasonably proportionate to the difficult, tense and uncertain
26      situation that Reynolds faced in this traffic stop, and did not constitute excessive

27  _____

28      [5]Because of that similarity, the Court believes that it is more efficient to dispose of this case under step two
    of the qualified immunity framework. See Pearson, 129 S.Ct. at 821; Moss, 572 F.3d at 968 n.5.

                                                    7

force. From the time Draper met Reynolds at the back of the truck, Draper was hostile, belligerent, and uncooperative. No less than five times, Reynolds asked Draper to retrieve documents from the truck cab, and each time Draper refused to comply. Rather, Draper accused Reynolds of harassing him and blinding him with the flashlight. Draper used profanity, moved around and paced in agitation, and repeatedly yelled at Reynolds. Because Draper repeatedly refused to comply with Reynolds's verbal comments, starting with a verbal arrest command was not required in these particular factual circumstances. More importantly, a verbal arrest command accompanied by attempted physical handcuffing, in these particular factual circumstances, may well have, or would likely have, escalated a tense and difficult situation into a serious physical struggle in which either Draper or Reynolds would be seriously hurt. Thus, there was a reasonable need for some use of force in this arrest.

Although being struck by a taser gun is an unpleasant experience, the amount of force Reynolds used - a single use of the taser gun causing a one-time shocking - was reasonably proportionate to the need for force and did not inflict any serious injury. Indeed, the police video shows that Draper was standing up, handcuffed, and coherent shortly after the taser gun stunned and calmed him. The single use of the taser gun may well have prevented a physical struggle and serious harm to either Draper or Reynolds. Under the "totality of the circumstances," Reynolds's use of the taser gun did not constitute excessive force, and Reynolds did not violate Draper's constitutional rights in this arrest.

Draper, 369 F.3d at 1278.

In the case at bar, like Draper, Slama refused commands (to open his fists and to spit out whatever was in his mouth). Slama was not belligerent, but he was tense, overly nervous, obstructive, and appeared to be destroying/swallowing contraband; this was not a mere traffic violation. Most importantly, Slama was actively resisting the officers. Slama was struggling with the officers and was strong enough to lift not only his own 200 pound frame, but was also able to lift Chavez, who weighed 215 pounds. Chavez felt that he could not control/keep down Slama. Although the taser prevented a physical struggle in *Draper*, the single taser application in this case prevented further escalation of a physical struggle, and in fact ended it. Also, like *Draper*, there is no indication that Slama suffered any significant injury.

The encounter with Slama occurred in 2005. *Draper* was decided in 2004, and the Court is not aware of any 2005 (or earlier) Ninth Circuit cases that would undermine *Draper*. In light of *Draper* and Slama's conduct, a reasonable officer in Chavez's position could reasonably believe that a single taser application on Slama was constitutional. See Saucier, 533 U.S. at 205-06; Skoog, 469 F.3d at 1229; Johnson, 340 F.3d at 794; Draper, 369 F.3d at 1278; Jackson, 268 F.3d at 651. Qualified immunity, and summary judgment in favor of Defendants, is appropriate.

8

## **CONCLUSION**

Defendants move for summary judgment on the only remaining cause of action in this case, excessive force in violation of the Fourth Amendment.  Defendants' evidence indicates that the leg sweep was not excessive, and, at the least, a reasonable officer in Chavez's position could believe that the taser application was constitutional.  The evidence also indicates that Shaklanian did not apply force against Slama.  In light of Defendants' evidence, Slama was required to produce contrary evidence and arguments.  Matsushita Elec., 475 U.S. at 586; Nissan Fire, 210 F.3d at 1103.  Slama has failed to do so.  Summary judgment in favor Defendants on the second cause of action will be granted.


Accordingly, IT IS HEREBY ORDERED that:

1.      Defendants motion for summary judgment on the second cause of action is GRANTED;

2.      All currently pending dates and deadlines are VACATED; and

3.      The Clerk shall CLOSE this case.


IT IS SO ORDERED.

**Dated:     May 17, 2010**                            **/s/ Anthony W. Ishii**
                                                CHIEF UNITED STATES DISTRICT JUDGE